IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

KELVIN WILLIAMS,

  Plaintiff,

vs.

CARL HUMPHREYS, Warden;
RANDALL HOLDEN, and
Mr. COPELAND,

  Defendants.

CIVIL ACTION NO.: CV504-053

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Ware State Prison in Waycross, Georgia, filed an action pursuant to 42 U.S.C.A. § 1983 contesting certain conditions of his confinement. Movant Copeland ("Copeland") filed a Motion for Summary Judgment, and Plaintiff has responded. For the following reasons, Copeland's Motion for Summary Judgment should be **GRANTED** in part and **DENIED** in part.

## STATEMENT OF THE CASE

Plaintiff contends that he has been denied a nutritionally adequate diet since his arrival at Ware State Prison. Plaintiff asserts that he needs adequate substitutions for certain foods, such as pork, due to his religious beliefs. Plaintiff alleges that he has suffered from nausea, abdominal pain, and weight loss as a result of his diet. Plaintiff also alleges that Copeland, as Director of the Kitchen at Ware State Prison, knows or should know that a substantial risk to Plaintiff's health exists.

Copeland asserts that inmates who decline to eat pork still receive an adequate number of calories per day from the food that they are served. Copeland alleges that Plaintiff never informed him that he had lost weight, suffered from nausea or abdominal pains, or had any other physical problems because of the diet he received at Ware State Prison. Copeland also alleges that Plaintiff's medical records indicate that he complained of abdominal pain on one occasion, and he was told to avoid greasy foods. Copeland contends that Plaintiff's weight has fluctuated while at Ware State Prison; however, Plaintiff's weight returned to what it was upon his arrival at Ware State Prison.

## STANDARD OF DETERMINATION

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)).

The moving party bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Williamson Oil Co., Inc.

2

v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION OF AUTHORITY

### I. Deliberate Indifference

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. This duty to safeguard embodies the principle requiring prison officials to provide inmates with humane conditions of confinement, including adequate food. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed.2d 811 (1994). "To show a violation of [his] Eighth Amendment rights, [a p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1319 (11th Cir. 2005). "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to

3

AO 72A
(Rev. 8/82)

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. at 1319-20 (quoting Farmer, 511 U.S. at 837, 114 S. Ct. at 1979). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. For summary judgment purposes, all disputed facts are resolved in accord with Plaintiff's view of the facts. Id. at 1320.

Like any deliberate indifference claim, a prisoner must satisfy both an objective and a subjective inquiry. Chandler, 379 F.3d at 1289-90. Under the objective component, a prisoner must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed.2d 156 (1992). "Specifically, a prisoner must prove a serious medical need or the denial of the minimal civilized measure of life's necessities." Miller v. King, 384 F.3d 1248, 1260-61 (11th Cir. 2004). As for the subjective component, "the prisoner must prove that the prison official acted with '"deliberate indifference."'" Id. (quoting Farmer, 511 U.S. at 837, 114 S. Ct. at 1979). To prove deliberate indifference, the prisoner must show that the defendant prison official '"acted with a sufficiently culpable state of mind'" with regard to the serious prison condition or serious medical need in issue. Id. (quoting Chandler, 379 F.3d at 1289-90).

Copeland avers that Plaintiff cannot establish that he was deliberately indifferent to Plaintiff's health. Copeland contends that Plaintiff cannot demonstrate that being denied a pork substitute resulted in Plaintiff being denied the "minimal civilized measure [of] life's necessities." (Doc. No. 28, p. 6.) Copeland asserts that Plaintiff receives an adequate

4

number of calories regardless of whether he eats pork. Copeland also asserts that Plaintiff's medical records reveal that Plaintiff has suffered no adverse physical consequences because he chooses not to eat pork. Copeland alleges that Plaintiff has not informed him that he has lost weight, that he suffered from nausea or abdominal pains, or that he had any other physical problems as a result of his diet at Ware State Prison. Copeland contends that if Plaintiff had ever informed him of any physical problems, Copeland would have directed him to go to the medical unit immediately.

Plaintiff contends that his religious beliefs prevent him from consuming pork and that he is allergic to pork. Because of these issues, Plaintiff asserts that there "is a necessity for an adequate substitution for pork." (Doc. No. 34, p. 3.) Plaintiff alleges that Standard Operating Procedure IVL01-0002 provides that a pork item may be replaced by beef, chicken, or turkey, and that, to that extent, he has an inherent liberty interest in receiving a nutritionally adequate diet. Plaintiff asserts that he only made one complaint about abdominal pain but, because he has lost 12 pounds since his arrival at Ware State Prison, this is sufficient to meet the objective component of the deliberate indifference standard. Plaintiff also asserts that Copeland has been aware of the seriousness of depriving an inmate of a nutritionally adequate diet. Plaintiff contends that Copeland was made aware of his complaints regarding his diet and nutrition because Plaintiff has filed grievances about these conditions.

Each party has submitted documents in support of his position. These documents reveal that Plaintiff is allergic to pork, and whether his allergy is merely self-reported or medically verifiable is unclear. (See Doc. No. 36, Exs. A1, A2; Doc. No. 30, Ex. G.) In addition, both parties have submitted a copy of SOP IVL01-0002, which is the SOP

5

pertaining to food preparation, service, and transportation. Copeland appears to rely on this SOP as a buttress for his position that Plaintiff receives adequate nutrition; however, the Court fails to understand how this SOP supports Copeland's position that Plaintiff does not satisfy the objective requirement. This SOP states that the Georgia Department of Corrections wrote its Master Menu to allow anyone who does not eat pork to receive the "required daily allowances." (SOP IVL01-0002, ¶ IVF1.) There is no indication what this means, despite Copeland's contention to the contrary. (Doc. No. 28, p. 8; Doc. No. 30, Ex. E.) This SOP also states that "When a menu substitution is necessary, a pork item may *only* be substituted for another pork item. A pork item *may*, however, be replaced by beef, chicken, turkey, etc." (SOP IVL01-0002, ¶ IVF4) (emphasis supplied). There is no indication as to when another meat item may be a substitute for a pork item or when a pork item must be substituted for another pork item. The Court notes the existence of SOP IVL01-0002. Nonetheless, it appears that the Georgia Department of Corrections implemented this SOP in some way to justify the possible infringement on an inmate's constitutional rights. Copeland undoubtedly relied on this SOP to deny Plaintiff a pork substitute. A trier of fact may conclude that the existence of this SOP brings into question whether an inmate will ever receive a proper substitution for pork in his diet, and thus, whether an inmate still receives a nutritionally adequate diet.

Copeland also notes that Plaintiff's weight "has fluctuated" but "has not changed dramatically." (Doc. No. 28, p. 8.) Plaintiff asserts that his weight fluctuation is documented in his medical records as weight loss, and he also asserts that Copeland has not contended that his weight gain is due to Plaintiff receiving a nutritionally adequate diet. (Doc. No. 34, p. 7.) As for the subjective component of this analysis, a review of Grievance

6

Number 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 and Deputy Warden Holden's Response indicates that Copeland appeared to know that Plaintiff was not receiving a pork substitute. Warden Howerton denied Plaintiff's grievance, and in so doing, informed Plaintiff that his "claim that when pork is served by food service that a sufficient caloric substitute is not provided cannot be supported. Mr. Copeland, food service supervisor, states that it has been agreed. . . that any inmate [who] doesn't eat pork will still receive the required colories [sic] on the daily menu when by-passing the pork." (Doc. No. 30, Ex. D.)

There are genuine issues of material fact as to whether Copeland was deliberately indifferent to Plaintiff's health and nutritional needs. Plaintiff's medical records reveal that he is allergic to pork. This fact raises the question of whether Copeland was aware of Plaintiff's medical condition and whether Copeland's denial of a pork substitute was as a result of his alleged deliberate indifference to Plaintiff's health and nutritional needs. Accordingly, Copeland is not entitled to summary judgment on Plaintiff's deliberate indifference claim.

## II. Qualified Immunity

The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed.2d 396 (1982); see Stough v. Gallagher, 967 F.2d 1523, 1525 (11th Cir. 1992). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Harlow, 457 U.S. at 818-19, 102 S. Ct. at 2738. In employing the qualified

immunity test, the court must consider the facts in the light most favorable to the plaintiff. Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 840, 133 L. Ed.2d 773 (1996). In determining whether a defendant is entitled to qualified immunity, the Supreme Court stated:

> the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered on a more specific level.

Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155, 150 L. Ed.2d. 272 (2001). The Court determined that the first component of the bifurcated test requires a finding that the officer's alleged conduct violated a constitutional right. Id. (citing Siegert v. Gilley, 500 U.S. 226, 232, 11 S. Ct. 1789, 114 L. Ed.2d 277 (1991)). Upon finding, in the light most favorable to Plaintiff, that the alleged actions exhibited a constitutional violation, the Court adhered to the doctrine that the right allegedly violated must be clearly established. Id., 121 S. Ct. 2156; Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed.2d 523 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202, 121 S. Ct. at 2156; Wilson v. Layne, 526 U.S. 603, 615, 119 S. Ct. 1692, 143 L. Ed.2d 818 (1999). The Supreme Court required a more specific finding than one determining that plaintiff's allegations of a constitutional violation satisfied the second component of qualified immunity because a reasonable officer is aware of the general prohibitions on constitutional infringements. Saucier, 533 U.S. at 201, 121 S. Ct. at 2156.

Copeland asserts that he is entitled to qualified immunity because he was

8

performing discretionary functions, and, as a result, Plaintiff's suit against him in his individual capacity is barred. Copeland contends that he did not have "fair warning" that the "specific actions alleged by the Plaintiff were unconstitutional." (Doc. No. 28, p. 11, citing Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed.2d 432 (2002)).

Plaintiff asserts that case law indicates that courts have condemned the practice of depriving inmates of water. Plaintiff also asserts that this decision, along with other decisions, could not allow Copeland to reasonably believe that the policy and practice of not allowing a pork substitute is constitutional.

Copeland's assertion that he did not have "fair warning" that the "specific actions alleged by the Plaintiff were unconstitutional" is without merit. Copeland, as the Kitchen Supervisor at Ware State Prison, is undoubtedly aware that he has a constitutional duty to provide Plaintiff and all inmates a nutritionally and medically adequate diet. As genuine issues of material fact exist as to whether Copeland was deliberate indifferent to Plaintiff's health and nutritional needs, Copeland is not entitled to summary judgment based on qualified immunity.

## III. Eleventh Amendment Immunity

Copeland alleges that Plaintiff did not indicate whether he sued him in his individual and/or official capacities. Copeland contends that he is immune from Plaintiff's claim for monetary damages to the extent Plaintiff has sued him in his official capacity. Plaintiff avers that he is seeking prospective injunctive relief against Copeland, and therefore, he is not entitled to Eleventh Amendment immunity.

The Eleventh Amendment protects states from being sued in federal court without their consent. Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). A lawsuit against

9

state officials in their official capacities is no different from a suit against a state itself; such defendants are immune. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed.2d 45, 58 (1989). In enacting 42 U.S.C.A. § 1983, Congress did not intend to abrogate "well-established immunities or defenses" under the common law or the Eleventh Amendment. Id., 491 U.S. at 67, 109 S. Ct. at 1210. Because the state of Georgia would be the real party in interest in a suit against Copeland in his official capacity, the Eleventh Amendment immunizes him from suit in his official capacity for monetary damages. Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989).

To the extent Plaintiff seeks to hold Copeland liable in his official capacity as a prison official at Ware State Prison, Copeland is entitled to summary judgment on Plaintiff's monetary damages claims pursuant to Eleventh Amendment immunity. Plaintiff may proceed with his claims against Copeland in his official capacity only for prospective injunctive relief.

## IV. Physical Injury Requirement

Finally, Copeland asserts that Plaintiff's institutional records show that he has not suffered any "short or long term physical injury" even though he alleges in his Complaint that he suffered from nausea, abdominal pain, and weight loss. (Doc. No. 28, p. 12.) Copeland contends that 42 U.S.C.A. § 1997e(e) bars Plaintiff's claims for compensatory damages.

Plaintiff alleges that he lost 12 pounds and suffered from abdominal pains and nausea as a result of the unconstitutional deprivation of a pork substitute in his diet. Plaintiff also alleges that he is not required to make continuous medical appointments and that his weight loss is enough to show that he suffered a physical injury.

AO 72A
(Rev. 8/82)

The Prison Litigation Reform Act ("PLRA"), in pertinent part, provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.A. § 1997e(e). This section of the PLRA requires a damages recovery for mental or emotional injury to be connected to a physical injury. Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002). The physical injury must be more than *de minimis* in order to avoid the application of 1997e(e). Id. at 1313.

In support of his position that Plaintiff has not suffered a physical injury, Copeland cites to Aziyz v. Chatman, No. 02-16295 (11th Cir. Jul. 17, 2003), an unpublished Eleventh Circuit opinion. The Court notes the persuasive value of this opinion but notes that Aziyz is distinguishable from the case *sub judice*. In Aziyz, the plaintiff complained about prison officials not recognizing his religious name. The Eleventh Circuit noted that plaintiff failed to establish a cause of action for compensatory or punitive damages for mental or emotional injury because he did not first establish a physical injury. However, in the case *sub judice*, Plaintiff alleges that he suffered physical impairments as a result of Copeland's alleged unconstitutional action. Plaintiff has alleged that he suffered from physical injury sufficient to maintain his cause of action. (See Compl., p. 6.)

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Copeland's Motion for Summary Judgment (Doc. No. 28) be **GRANTED** in part and **DENIED** in part. Plaintiff's monetary damages claim against Copeland in his official capacity should be **dismissed**. Plaintiff's other claims against Copeland should remain pending.

**SO REPORTED** and **RECOMMENDED**, this 26th day of July, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)